# Exhibit "B"

| | SUM-100 |
|---|---|
| **SUMMONS** *(CITACION JUDICIAL)* | *FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)* |
| **NOTICE TO DEFENDANT:** THE WASHINGTON NEWSPAPER *(AVISO AL DEMANDADO):* PUBLISHING COMPANY, LLC dba The Washington Examiner, a Delaware corporation; and Does 1 through 10 | **ELECTRONICALLY FILED** Superior Court of California, County of San Diego **12/16/2019** at 05:19:42 PM Clerk of the Superior Court By Vanessa Bahena, Deputy Clerk |
| **YOU ARE BEING SUED BY PLAINTIFF:** JOSEPH SCHMIDT *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* | |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *(El nombre y dirección de la corte es):*
Superior Court, County of San Diego
330 West Broadway
San Diego, CA 92101
Central Courthouse

CASE NUMBER: *(Número del Caso):* 37-2019-00066609-CU-DF-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Gilleon (SBN 195200)    619.702.8623    619.374.7040
Gilleon Law Firm, APC
1320 Columbia Street, Ste. 200
San Diego, CA 92101

DATE: 12/17/2019    Clerk, by V. Bahena, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
12/16/2019 at 05:19:42 PM
Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

1 Daniel M. Gilleon (SBN 195200)
  James C. Mitchell (SBN 87151)
2 Gilleon Law Firm, APC
  1320 Columbia Street, Suite 200
3 San Diego, CA 92101
  Tel: 619.702.8623
4 Fax: 619.702.6337

5 Attorneys for Plaintiff Joseph Schmidt

8      SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
                                (Central)

11 JOSEPH SCHMIDT,                          CASE NO. 37-2019-00066609-CU-DF-CTL

12                Plaintiff,                COMPLAINT FOR DAMAGES:
                                            1. Defamation;
13     vs.                                  2. Defamation By Implication; and
                                            3. Infliction Of Emotional Distress
14 THE WASHINGTON NEWSPAPER
   PUBLISHING COMPANY, LLC dba The
15 Washington Examiner, a Delaware
   corporation; and Does 1 through 10,
16
                  Defendants.
17

18     Plaintiff Joseph Schmidt alleges:

19                              **GENERAL ALLEGATIONS**

20     1.     This is an action for damages in excess of $15,000, exclusive of interest, costs, and

21 attorneys' fees.

22     2.     Defendant Washington Examiner is a limited liability company organized under the

23 laws of Delaware with its principal place of business in the District of Columbia. The principal

24 address of the corporation is 1152 15th St. Northwest Suite 200, Washington, DC 20005.

25 Washington Examiner is a digital and print news publication that has subscribers and readers all

26 over the nation, including in San Diego County, California. The Defendant is wholly owned by

27 Clarity Media Group, Inc. which is a Delaware Corporation.

28 ///

Complaint
1

3. The plaintiff, Chief Petty Officer Joseph Schmidt, was a resident of San Diego County, California in April of 2017 at the time that the Washington Examiner published a highly defamatory article and headline with Joseph Schmidt's picture. The article published by the Washington Examiner was titled "Navy SEAL charged with making child porn" and it discussed detailed allegations about a Navy SEAL who was accused of raping women, children and dogs. The Washington Examiner posted Chief Petty Officer Joseph Schmidt's photograph with the article instead of a photograph of the Navy SEAL who had been actually been arrested and accused of the horrific acts. As is more fully described herein, the Washington Examiner's article-with the photo falsely identifying Chief Petty Officer Joseph Schmidt as a child predator-was widely circulated on the internet and throughout the San Diego community where plaintiff lived with his wife and children.

4. Venue is proper in San Diego County, California, because the plaintiff lived in San Diego County at the time that the defamatory article was published and plaintiff suffered harm in San Diego County. Additionally, a substantial part of the events giving rise to this action occurred in San Diego County, California.

5. Plaintiff filed his action in Palm Beach County Circuit Court on February 28, 2018 and asserted claims of defamation and defamation by implication against Defendant Washington Examiner. Plaintiff filed an Amended Complaint on April 4, 2018.

6. On May 11, 2018, Defendant Washington Examiner filed a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida and Notice of Removal to United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446. The Defendant's Notice of Removal acknowledged that the Defendant is a citizen of Delaware, the District of Columbia and Colorado.

7. On May 21, 2018, the Defendant filed its Motion to Transfer the case to the Southern District of California pursuant to 28 U.S.C. §1404(a). Therein, the Defendant urged the Court to transfer the case to California because California had a greater interest in deciding the merits of claims brought by its residents than Florida did. Defendant argued that plaintiff's decision to file

in Florida should be given minimal deference in favor of filing in California. The Defendant contended that California would be more convenient because the plaintiff, witnesses and documents were in California and that California was the "locus of operative facts" since the plaintiff suffered reputational harm there. The Defendant maintained that California law applied to this case, so California courts would be in a better position hear the evidence, decide the legal issues and determine whether the plaintiff's claims were meritorious..

8.  On July 2, 2018, Defendant filed a Motion to Dismiss asserting that the Court lacks personal jurisdiction over Defendant.

9.  On September 20, 2018, the Court held a hearing and the parties presented their arguments regarding the Defendant's Motion to Dismiss the case for lack of personal jurisdiction and Motion to Transfer the case to the Southern District of California. Both parties presented lengthy arguments regarding the Defendant's contacts, business activities and affiliations within the State of Florida. Ultimately, the Court decided that it lacked personal jurisdiction over the Defendant and granted its Motion to Dismiss on that basis. In its October 4, 2018 Order, the Court declined to consider the Defendant's Motion to Transfer the case to the Southern District of California and denied it as MOOT. Thereafter, the case was closed.

10. In its Order, the Court stated that the fora with the greatest interest in furthering substantive social policies was California, which had an interest in protecting its citizens, or the states of the Defendant's citizenship-which the Court identified as the District of Columbia, Colorado and Delaware. The Court noted that District of Columbia, Colorado and Delaware all have an interest in deterring their citizens from engaging in defamatory speech.

11. On March 25, 2019, the plaintiff filed a Complaint in the Superior Court of the State of Delaware wherein the Defendant is incorporated. On April 30, 2019, the Defendant filed another Motion to Dismiss on the grounds of Forum Non Conveniens and argued that the Complaint should be time-barred. On September 30, 2019, the Court issued an order holding that plaintiff's claim is not time-barred. Regarding the Defendant's argument that Delaware was not a convenient forum, the Court weighed the Cyro-maid factors and dismissed the Complaint on the basis of Forum Non Conveniens.

12. The plaintiff exhibited good faith and reasonable conduct in filing the Complaint timely and bringing the case in appropriate forums. The Defendant has previously argued that it should not be sued in Delaware, because it would be too inconvenient for the Washington Examiner. The merits of the case have never been challenged or disputed by the Washington Examiner.

13. Plaintiff hereby files this Complaint against the Washington Examiner in the State of California.

14. Leading Chief Petty Officer of the Special Operations Command Officer Joseph Schmidt is a highly decorated Navy SEAL who has proudly served this country for the last 23 years.

15. In April of 2017, plaintiff was active duty in SEAL Team 1 based out of San Diego County, California.

16. Plaintiff has an exemplary military record and he has received numerous commendation medals. Plaintiff has received a citation of valor for combat overseas and he was named the "Sailor of the Year" in both 2009 and 2011. Plaintiff has also been awarded the Army Commendation Medal, the Navy and Marine Corps Commendation Medal with Valor (two times), the Navy and Marine Corps Achievement Medal (seven times), the Combat Action Ribbon, the Navy Good Conduct Medal (five times), and the Instructor of the Quarter in 2008 and 2009.

17. Plaintiff was deployed to active combat in 2002 and 2003.

18. Plaintiff works with the Make a Wish Foundation and regularly visits hospitals to lift the spirits of gravely ill children. In addition to his work in the community as a SEAL, plaintiff spends a significant amount of his free time volunteering at his children's school and working with underprivileged kids. He also created a program called Navy Seal Scout Team that has been instituted in many different schools to motivate and assist local youth. Put simply, plaintiff has dedicated his life to serving others.

19. On April 21, 2017, Defendant Washington Examiner wrote a story about a Navy SEAL who had been charged with committing absolutely heinous crimes against children and engaging in bestiality. For reasons yet to be determined, Defendant Washington Examiner recklessly published the story with a photo of plaintiff instead of a photo of the actual predator.

20. Defendant Washington Examiner placed a large headline over the photo of plaintiff that read, "Navy SEAL charged with making child porn" Below plaintiff's photo, Defendant Washington Examiner wrote the words, "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

21. Defendant Washington Examiner published plaintiff's photo on the homepage of Defendant's website with the headline "Navy SEAL charged with making child porn" printed over his photo. Defendant Washington Examiner placed a caption below plaintiff's photo on the homepage of its website which read, "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

22. Defendant Washington Examiner touts that it has millions of readers who visit the homepage of its website each day.

23. Defendant Washington Examiner intended for the shocking allegations and headline to entice readers to read the full article. Defendant placed a link to the full article under plaintiff's photo and statements accusing plaintiff of sexually abusing small children.

24. Once the reader followed the link, the full story with plaintiff's photo pulled up with additional details and even more disgusting allegations.

25. The full story detailed perverse acts committed by a sexual predator and former Navy SEAL from Virginia Beach-someone plaintiff did not even know. The facts of the story include grotesque and horrific allegations accusing plaintiff of sexually molesting a "prepubescent minor" and raping a woman. Defendant Washington Examiner accused plaintiff of taking videos of himself sexually assaulting children and possessing a "trove of other photos of children in sex acts." Later versions of the story run also stated that plaintiff had engaged in bestiality by having sex with a dog.

26. A reasonable person who saw the publication would logically assume that plaintiff had been "charged with making child porn" and "had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts[.]" Further, readers would believe that the horrific acts outlined in the body of the article had also been committed by plaintiff.

27. Plaintiff has never engaged in any of the abhorrent acts described in the article-nor had he ever previously been suspected or accused of such things. Through no fault of plaintiff,

1 | Defendant Washington Examiner negligent and sloppy reporting falsely identified him as the face
2 | of a child predator and rapist.
3 |     28.    Defendant Washington Examiner's article quickly spread all over the Internet.
4 | Trusting that Defendant had done its homework and associated the correct photo to its article
5 | identifying a child sex predator, multiple media outlets followed suit and published plaintiff's photo
6 | on their websites. Within a few minutes, the article-and plaintiff's photo-went viral and were being
7 | viewed by people all over the world. Multiple media outlets in plaintiff's community ran the story
8 | with his photo attached as a direct consequence of Defendant Washington Examiner's egregious
9 | error. As a result, plaintiff's reputation, built through a lifetime of military and community service,
10 | was smeared in his community and throughout the world.
11 |     29.    Readers of the article called plaintiff a "child molester," a "sicko," and a "predator."
12 | They called for him to be killed and locked in prison. As the article began to spread on Facebook,
13 | the comments got even more sickening and violent.
14 |     30.    After some time passed, Defendant Washington Examiner realized that they posted
15 | the photo of a highly decorated military hero to its article and publicly accused him of countless
16 | unspeakable crimes. Nevertheless, Defendant did not even bother to print a retraction or tell its
17 | readers that its inexcusable blunder falsely identified an innocent man.
18 |     31.    Plaintiff and his family began getting calls from friends and acquaintances asking
19 | if the allegations that Defendant Washington Examiner had lodged against him were true. The
20 | Schmidt family was terrified to go outside for fear that someone would actually make good on their
21 | threats. Plaintiff called NCIS, the FBI, and the local police to warn them about the article and tell
22 | them that he and his family may need protection at their home. The Schmidt family was approached
23 | by people from their suburban neighborhood and at their son's middle school asking them about the
24 | child rape allegations and questioning why he was not in jail.
25 |     32.    After reading all of the death threats, plaintiff bought a security camera system for
26 | his home and did not leave his home without a firearm. Plaintiff and his wife continue to live in
27 | fear. They were forced to sell their home and transfer their son to a different school.
28 | ///

33. Plaintiff's reputation has been forever tarnished by the outrageous allegations that were lodged against him by Defendant Washington Examiner.

34. Further, plaintiff's photo is still associated with disgusting Internet search terms to this day. As a result of Defendant's reckless errors, plaintiff's photo is still one of the top results appearing in response to internet searches for "navy seal child rape," "military child rape," and "navy seal child porn."

35. Like the people commenting on Defendant Washington Examiner article, plaintiff agrees that child rapists are truly the most despicable people in our society. Being accused of something so heinous has had a profound effect on plaintiff and caused him severe mental anguish, emotional distress, and anxiety.

36. On July 26, 2017, plaintiff contacted Defendant Washington Examiner and demanded that a retraction be printed within 24 hours. Defendant Washington Examiner did not even bother to respond to the request. To date, Defendant has never printed a retraction or even apologized to plaintiff.

**FIRST CAUSE OF ACTION**
**(Defamation Against All Defendants)**

37. Plaintiff realleges paragraphs 1 to 36.

38. Defendant Washington Examiner published false and defamatory statements with plaintiff's photo and published it to millions of its readers.

39. Defendant Washington Examiner's article, its contents, and associated photo were not privileged in any manner.

40. Defendant Washington Examiner's written statements associated with plaintiff's photo were made with reckless disregard for their truth or falsity and with legal malice. These statements are completely false and extremely defamatory. Plaintiff's reputation was damaged by the false allegations lodged by Defendant.

41. Defendant Washington Examiner negligently published plaintiff's photo on an article identifying him as the perpetrator of heinous crimes that he did not commit. As a result, people who read the article believed that plaintiff was guilty of the horrible crimes alleged.

42. Defendant Washington Examiner knew or should have known that plaintiff did not commit any of the crimes Defendant accused him of committing in the article.

43. Plaintiff is a private individual and not a public figure.

44. Defendant Washington Examiner's false statements accusing plaintiff of committing the crimes outlined above are libel per se.

45. Defendant Washington Examiner's publication of the statement along with plaintiff's photo has falsely tainted and permanently damaged plaintiff's reputation.

46. Defendant Washington Examiner's publication of the statement along with plaintiff's photo has caused plaintiff severe mental and emotional distress and anxiety.

47. As a direct and proximate result of the publication of these defamatory statements and plaintiff's photo, plaintiff has suffered economic and noneconomic losses, lost wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, personal humiliation, expense of medical care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing and plaintiff will suffer the losses in the future.

## SECOND CAUSE OF ACTION
### (Defamation By Implication Against All Defendants)

47. Plaintiff realleges paragraphs 1 to 36.

48. Defendant Washington Examiner recklessly published a photo of plaintiff with the headline, "Navy SEAL charged with making child porn" written above it. Below plaintiff's photo, Defendant wrote the words, "His phone had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..."

49. A reasonable person who saw the publication would logically assume that plaintiff had been "charged with making child porn" and "had photos showing molestation of a sleeping prepubescent minor and a trove of other children in sex acts..." Further, readers would believe that the horrific acts outlined in the body of the article had also been committed by plaintiff.

50. The article under his photo detailed heinous allegations of sexual abuse against women, children, and animals.

///

51. The article would clearly lead the reader to believe that plaintiff was a rapist and child sex predator.

52. Defendant Washington Examiner acted in reckless disregard as to the falsity of the publicized matter and the false light in which plaintiff would be placed.

53. Any reasonable person would be seriously offended and aggrieved by the publicity, invasion of privacy and being associated with such vile conduct.

54. Defendant Washington Examiner's publication of the statement along with plaintiff's photo has falsely tainted and permanently damaged plaintiff's reputation.

55. Defendant Washington Examiner's publication of the statement along with plaintiff's photo has caused plaintiff severe mental and emotional distress and anxiety.

56. Defendant Washington Examiner omitted the fact that plaintiff was an innocent man and had never been accused or suspected of being a child predator or abuser.

57. As a direct and proximate result of the publication of these defamatory statements and plaintiff's photo, plaintiff has suffered economic and noneconomic losses, lost wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, personal humiliation, expense of medical care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing and plaintiff will suffer the losses in the future.

**THIRD CAUSE OF ACTION**
**(Infliction Of Emotional Distress Against All Defendants)**

58. Plaintiff realleges paragraphs 1 to 36.

59. Defendant Washington Examiner recklessly inflicted mental suffering on plaintiff by attaching to his photo accusations in an article that were highly defamatory and accused him of committing horrific sex crimes against children, women and animals and published it for millions of people to see. Defendant was reckless when it published the photo and failed to research the story or the identity of plaintiff before publishing his photo on an article about a man who committed crimes against women, children and animals.

///

///

60. Defendant Washington Examiner knew or should have known that posting the photo with such an outrageously defamatory headline, caption and/or article would likely cause emotional distress.

61. Publishing an innocent person's photo on an article that would lead a reasonable person to believe that the individual was a rapist and child sex predator is outrageous and atrocious conduct. Failing to identify the individual in the photo before attaching their face to the story is shameful and shocking.

62. Defendant Washington Examiner's conduct and its publication of the photo and article caused plaintiff severe emotional distress.

63. The article would clearly lead the reader to believe that plaintiff was a rapist and child sex predator.

64. Defendant Washington Examiner's publication of the statement along with Office Schmidt's photo has falsely tainted and permanently damaged plaintiff's reputation.

65. Defendant Washington Examiner's publication of the statement along with plaintiff's photo has caused plaintiff severe mental and emotional distress and anxiety.

66. As a direct and proximate result of the publication of these defamatory statements and plaintiff's photo, plaintiff has suffered economic and noneconomic losses, lost wages, damage to reputation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, personal humiliation, expense of medical care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing and plaintiff will suffer the losses in the future.

### REQUEST FOR RELIEF

THEREFORE, plaintiff Joseph Schmidt requests a judgment against defendants The Washington Newspaper Publishing Company, LLC dba The Washington Examiner, a Delaware corporation and Does 1 through 10:

a. An award of all compensatory damages that plaintiff has suffered in the past and will suffer in the future, including incidental and consequential damages resulting from defendant Washington Examiner's publication in an amount to be determined at trial;

b. An award of pre-judgment and post-judgment interest;

1      c.     An award of all costs and expenses plaintiff has incurred and will incur in this
2  action; and

3      d.     An award of such other and further relief this Court may deem just, equitable and
4  proper.

6  Date: December 16, 2019           Gilleon Law Firm, APC

*[signature]*

James C. Mitchell, Attorneys for
Plaintiff Joseph Schmidt

Complaint
11

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Daniel M. Gilleon (SBN 195200)
James C. Mitchell (SBN 87151)
Gilleon Law Firm, APC
1320 Columbia Street, Suite 200
San Diego, CA 92101
TELEPHONE NO.: 619.702.8623   FAX NO.: 619.374.7040
ATTORNEY FOR (Name): Plaintiff Joseph Schmidt

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Courthouse

CASE NAME: Schmidt v. The Washington Newspaper Publishing Company, LLC

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/16/2019** at 05:19:42 PM

Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2019-00066609-CU-DF-CTL |
|---|---|---|
| [X] Unlimited [ ] Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Katherine Bacal DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[X] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action (specify): 3

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 12/16/2019

James C. Mitchell (SBN 87151)
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Exhibit "B"
Page 31

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO |  |
|---|---|
| STREET ADDRESS: 330 W Broadway | |
| MAILING ADDRESS: 330 W Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |
| TELEPHONE NUMBER: (619) 450-7059 | |
| PLAINTIFF(S) / PETITIONER(S): Joseph Schmidt | |
| DEFENDANT(S) / RESPONDENT(S): The Washington Newspaper Publishing Company LLC | |
| SCHMIDT VS. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY LLC [IMAGED] | |
| **NOTICE OF CASE ASSIGNMENT** and **CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 37-2019-00066609-CU-DF-CTL |

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge: Katherine Bacal                                      Department: C-69

**COMPLAINT/PETITION FILED:** 12/16/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/07/2020 | 10:00 am | C-69 | Katherine Bacal |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

---

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

Page: 2



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2019-00066609-CU-DF-CTL        CASE TITLE: Schmidt vs. The Washington Newspaper Publishing Compan

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
    (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
    (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
    (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

 **CT Corporation**

**Service of Process Transmittal**
04/02/2020
CT Log Number 537484091

**TO:** Bob Manzi
Clarity Media Group, Inc.
555 17th St
Denver, CO 80202-3950

**RE:** **Process Served in Delaware**

**FOR:** The Washington Newspaper Publishing Company, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOSEPH SCHMIDT, Pltf. vs. THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 3720190066609CUDFCTL |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/02/2020 at 11:35 |
| **JURISDICTION SERVED:** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air, 1ZX212780129878663<br><br>Image SOP<br><br>Email Notification, Ceci Oertli  Ceci.Oertli@tac-denver.com<br><br>Email Notification, Bob Manzi  bmanzi@claritymg.com<br><br>Email Notification, Andrea Vinnola  andrea.vinnola@tac-denver.com<br><br>Email Notification, Roxane J. Perruso  roxane.perruso@tac-denver.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Page 1 of 1 / MM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Apr 2, 2020

**Server Name:** Ramona Talvacchio

**Location:** Wilmington, DE

| Entity Served | THE WASHINGTON NEWSPAPER PUBLISHING COMPANY, LLC |
|---|---|
| Agent Name | THE CORPORATION TRUST COMPANY |
| Case Number | 3720190066609cuctl |
| Jurisdiction | DE |

